IRVING, J.,
Dissenting:
¶ 16. The majority reverses and remands the trial court’s grant of custody of Rickie Brown’s children to their maternal grandparents because, .in the view of the *610 majority, the trial court “incorrectly applied the law in finding that Mr. Brown was an unfit parent.” I agree that the trial court erred in granting custody of Mr. Brown’s children to their maternal grandparents, and I also agree that the trial judge incorrectly applied the law to the facts. However, my reading of the record reveals that the trial court did not apply an erroneous legal standard. Rather, it incorrectly and inappropriately attempted to make the facts fit the law. Therefore, I dissent from the majority’s decision to remand this case for further proceedings. I would reverse and render the trial court’s judgment granting custody to the grandparents because, in my opinion, the trial court applied the proper legal standard, but its finding that Mr. Brown is an unfit parent is not supported by substantial evidence.
¶ 17. To demonstrate that the trial judge used the proper legal standard, I quote extensively from the judge’s ruling.
From June of 1998 until July of 2000, the defendant had no personal contact except by telephone with his children. In July of 2000, the children were taken to the State of Pennsylvania and stayed for a short period of time with the defendant father. Since that time, they had no personal contact with him, again, except by telephone, until approximately November 1 following the death of his wife when he traveled here to Mississippi to attend her funeral. Only once during the period of time from June of 1998 until the time of his wife’s death in 2002 did the father have any contact with his children. It’s a span of some four and a half years.
His child support throughout the period of time which I have enumerated during their separation, which they were never divorced incidentally, was erratic at best. He was court ordered to pay the amount of $615 per month beginning on July 1 of 2001. Since that period of time, his arrearage has reached $4,397 according to Exhibit 3 entered into evidence as testimony. His testimony that he voluntarily paid approximately $500 per month is totally uncorroborated by any other witness, as well as any physical evidence. Moreover, the testimony as to his payment of support is doubtful in this Court’s mind in so much as his performance after the. court ordered support was erratic at best. Those are the facts. We look then at the law. The parties have pretty much agreed on the law. They pretty much agreed on the facts with the exception of a few, but they well agreed on the law. Sellers v. Sellers is a leading case in Mississippi cited at 638 So.2d 481, a 1994 Mississippi Supreme Court case, makes the following comment: “The well settled rule in a child custody case between a natural parent and a third party is that it is presumed that the best interest of the child, ” or children in this case, “will be preserved by being in the custody of the natural parent. In order to overcome this presumption, there must be a clear showing that, number one, the parent has abandoned the child; number two, the conduct of the parent is so immoral as to be detrimental to the child; or number three, the parent is mentally or otherwise fit to have custody of the child, ” and Sellers v. Sellers cites Rodgers v. Rodgers, 274 So.2d 671, a 73 Mississippi Supreme Court case which counsel for the defendant cites.
Applying that law to the facts at hand, there has been no showing whatsoever that Mr. Brown is mentally unfit to have custody of the children, nor has there been any showing that his morality would make him unfit. The abandonment issue must be looked at in terms of Smith v. Watson cited at 125 *611 So.2d 1030, a 1983 Mississippi Supreme Court case. Abandonment under the circumstances must be as defined in that case showing an intent to shirk or evade the duty, trouble, or expense of rearing it or callous indifference to its wants or reckless disregard for its welfare where he or she is guilty of such abandonment of it as to bar his or her. right thereafter to reclaim its custody from any person who may have administered to and protected it during such period of desertion. If the burden of proof required simply a preponderance of the evidence, I would find that he abandoned his children, but the proof calls for a clear showing, a clear and convincing showing that such is the case, and it cannot be said that he has abandoned his children.
There are three points to consider however. The Court finds that he has failed to support his children in a consistent manner since June of 1998. I further find that he has failed to provide any type of emotional support for his children during the lengthy illness and subsequent death of his wife in October 28, 2002. It must be remembered that he was well aware of the physical condition of his wife, that his children, particularly being the young children that they are, were living with her watching their mother die knowing that the end was coming in the latter part of 2002, and yet no emotional support or comfort was given to them by their father. And third, I find an unreasonable absence from the children exhibited by his lack of personal contact with the children over the past four and a half years with the exception of one occasion between July of 1998 — June 1998 and November of 2002.
Those factors being considered, the Court finds under the appropriate case law that he is otherwise unfit to have custody of his children. Inasmuch as this Court based upon the evidence presented before it and for the reasons I just set forth finds that he is unfit to have custody, we look then to the best interest of the children.
(emphasis added).
¶ 18. It seems obvious to me, from the quoted passage, that the trial judge applied the appropriate legal standard, finding no abandonment of the children by Mr. Brown. The trial judge also specifically found that Mr. Brown was neither morally nor emotionally unfit to have custody of the children. That should have been the end of the inquiry as there was -no facts supporting a finding that Mr. Brown was “otherwise unfit.”
¶ 19. Apparently, the majority believes that somehow, on these facts, a finding can be made that Mr. Brown was “otherwise unfit.” Therefore, it is remanding the case for further proceedings. In justifying its decision, the majority finds “that a failure to stay current on child support goes to whether a natural parent has abandoned his child and cannot be a factor in determining whether a natural parent is otherwise unfit.” Well, the trial court specifically found that Mr. Brown had not abandoned his children. The court made this finding after noting both the factors to be considered in determining whether abandonment had occurred and the standard of proof for finding abandonment. As the quoted passage shows, the chancellor acknowledged that
[abandonment under the circumstances must be as defined in that case showing an intent to shirk or evade the duty, trouble, or expense of rearing it of callous indifference to its wants or reckless disregard for its welfare where he or she is guilty- of such abandonment of it as to bar his' or her right thereafter to reclaim its custody from any person who may *612 have administered to and protected it during such period of desertion.
¶ 20. Clearly, the trial court was aware of Mr. Brown’s lack of payment of child support when it found that the proof would have been sufficient to find abandonment if the standard of proof were lower than the clear and convincing standard.
¶21. In my judgment, the chancellor attempted to reach a result which was not justified by either the facts or the law. The majority’s decision, though I am sure is not intended, gives support to this inappropriate endeavor. Therefore, for the reasons presented, I respectfully dissent.